UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARGARET LONG, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-592-GZS |
| | ) | FILED UNDER SEAL |
| FAIRBANK FARMS, INC., et al., | ) | |
| | ) | |
| Defendants and | ) | |
| Third-Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREATER OMAHA PACKING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Third-Party Defendant | ) | |

**************************************************************************

| | | |
|---|---|---|
| ALICE SMITH, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-60-GZS |
| | ) | FILED UNDER SEAL |
| FAIRBANK FARMS, INC., et al., | ) | |
| | ) | |
| Defendants and | ) | |
| Third-Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREATER OMAHA PACKING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Third-Party Defendant | ) | |

# ORDER ON FAIRBANK DEFENDANTS' MOTION TO COMPEL, FOR SANCTIONS, AND FOR ORDER TO SHOW CAUSE

Pursuant to Federal Rules of Civil Procedure 26(b) and 37(a) and (b), the Fairbank defendants/third-party plaintiffs ("Fairbank") seek an order (i) compelling third-party defendant GOPAC to produce certain additional information on account of asserted violations of its discovery obligations, (ii) for all just and appropriate sanctions against GOPAC relating to its asserted discovery violations, and (iii) to show cause as to why GOPAC should not be held in contempt for its accessing, in violation of applicable confidentiality orders, of Fairbank documents designated as for "Attorneys' Eyes Only" and its asserted misrepresentations to Fairbank and the court concerning that conduct. *See* Defendants' and Third-Party Plaintiffs' Motion and Memorandum of Law in Support of Their Motion To Compel, for Sanctions, and for an Order To Show Cause ("Fairbank Motion") (Docket No. 93, *Long*; Docket No. 73, *Smith*) at 1; Fairbank's Reply Brief in Support of Its Motion To Compel, for Sanctions, and for an Order To Show Cause ("Fairbank Reply") (Docket No. 118, *Long*; Docket No. 96, *Smith*) at 1-3.

For the reasons that follow, the motion is **_GRANTED_** in part insofar as it seeks the issuance of an order to show cause why GOPAC should not be held in contempt of court for its handling of Attorneys' Eyes Only documents, which order I am separately issuing herewith, and **_DENIED_** in part insofar as it seeks relief for asserted discovery violations.

## I. Asserted Discovery Violations

Fairbank contends that information obtained from its mirror imaging of certain GOPAC hard drives, which I permitted it to undertake by order dated September 28, 2010, *see* Report of Hearing and Order re: Discovery Disputes ("September 28 Order") (Docket No. 58, *Long*), as well as

2

documents obtained from third parties, make plain that GOPAC has withheld or destroyed important evidence. *See* Fairbank Motion at 3, 5-7. Specifically, Fairbank asserts that GOPAC (i) failed to produce responsive documents that Fairbank now has retrieved and (ii) apparently continues to withhold responsive documents housed in an older set of computers than those searched and in private email accounts. *See id*.

GOPAC denies, in their entirety, Fairbank's allegations that any discovery violation occurred. *See* Third-Party Defendant's Opposition to Defendants' and Third Party Plaintiffs' Motion To Compel, for Sanctions, and for an Order To Show Cause with Incorporated Memorandum of Law & Request for Testimonial Hearing ("GOPAC Response") (Docket No. 98, *Long*; Docket No. 77, *Smith*) at 10. Alternatively, it argues that any such violations were inadvertent and resulted from the scope, breadth, and technological demands of the requests rather than from willfulness or bad faith. *See id*.

### A. Alleged Failure To Produce Now-Retrieved Responsive Documents

Fairbank identifies five categories of documents unearthed in its mirror-imaging searches, or obtained from third parties, that it contends should have been, but were not, produced by GOPAC in response to various discovery requests: (i) emails between GOPAC and its laboratory, IEH, (ii) documents received from, provided to, or exchanged with GOPAC's customers regarding the sale, handing, and/or disposition of any of GOPAC's September 11, 2009, products, (iii) GOPAC's so-called "hot day" protocol, (iv) emails exchanging January 2010 drafts of GOPAC's response to the USDA's Notice of Intended Enforcement ("NOIE"), and (v) daily production records that support a summary spreadsheet found on GOPAC executive Angelo Fili's hard drive. *See* Fairbank Motion

3

at 3-5. With respect to three of these categories, Fairbank, the moving party, makes an insufficient showing that a discovery violation occurred:

    1.    <u>Emails Between GOPAC and IEH</u>. GOPAC plausibly explains that it did not produce emails that were "ticklers," that is, emails that did not contain actual test results but instead simply signaled that test results were forthcoming, because it considered such emails nonresponsive in light of a modification Fairbank made to the relevant subpoena. *See* GOPAC Response at 3-4; Exhs. 4 (Docket No. 93-5, *Long*; Docket No. 73-5, *Smith*) & 13 (Docket No. 93-14, *Long*; Docket No. 73-14, *Smith*) to Affidavit of Ralph A. Weber ("Weber Aff.") (Docket No. 92-1, *Long*; Docket No. 72-1, *Smith*), attached to Fairbank Motion; *compare* Subpoena dated February 22, 2010 ("February 22 Subpoena") (Docket No. 92-2, *Long*; Docket No. 72-2, *Smith*), Exh. 1 to Weber Aff., ¶¶ B.2, B.7 *with* email dated March 16, 2010 from Fairbank counsel Shawn Stevens to GOPAC counsel Brian Nolan ("March 16 email"), Appx. A to Affidavit of Brian D. Nolan ("Nolan Aff.") (Docket No. 98-2, *Long*; Docket No. 77-2, *Smith*), Exh. 2 to GOPAC Response.[1]

While Fairbank, in paragraph B of its February 22 Subpoena, had requested microbiological testing records for the period from January 1, 2009, to the present, including "[a]ny and all documents relating in any way to the <u>test</u> <u>results</u>[,]" February 22 Subpoena ¶ B.2 (emphasis in original), and "[a]ny and all documents, including but not limited to any correspondence," exchanged

---

[1] In support of its complaint that GOPAC failed to produce requested IEH-GOPAC emails, Fairbank produces only two complete emails as samples, both of which fairly can be characterized as "ticklers." *See* Exh. 4 to Weber Aff. One cannot tell from Fairbank's submitted partial spreadsheet of IEH emails found on GOPAC employee Angel Besta's hard drive whether any are "ticklers," *see* Exh. 13 to Weber Aff., and thus I have no reason to doubt GOPAC's representation that it could produce evidence demonstrating that they are, *see* GOPAC Response at 4, 7; Affidavit of Angel Besta ("Besta Aff.") (Docket No. 98-6, *Long*; Docket No. 77-6, *Smith*), Exh. 6 to GOPAC Response, ¶ 4 & Appx. A thereto.

4

between GOPAC and IEH, *id*. ¶ B.7, Fairbank counsel Stevens stated, with respect to the entirety of paragraph B:

> [W]e will agree to withdraw our requests at this time for any documents which would identify the names of any customers for which product testing was performed. Instead, we would ask that you simply produce for inspection all IEH microbiological testing and trend reports for the period June 1, 2009 through September 30, 2009 (with the express expectation, of course, that these reports will accurately reflect and detail the final results of any environmental, product, trim and/or other testing being performed on behalf of GOPAC by IEH). Although we will also agree at this time to withdraw our request for the IEH testing protocol "binder," we would expect compliance with the remainder of this section seeking documents relating in any way to FSIS microbiological sampling (and testing results) for the period June 1, 2009 to the present.

March 16 email. The Stevens modification is ambiguous; it plausibly could have been construed to limit the scope of requested IEH-GOPAC documents and correspondence, including emails, to those containing "all IEH microbiological testing and trend reports[.]" *Id*. While Stevens stated, in his March 16 email, that Fairbank reserved its "right to seek full compliance at a later date," *id*., Fairbank produces no evidence that it ever demanded full compliance.[2]

    2.    <u>"Hot Day" Protocol</u>. Fairbank requested operational and other plans "*in effect* within [GOPAC's] establishments, between June 1, 2009 and September 30, 2009[.]" February 22 Subpoena ¶ C.2 (emphasis added). There is conflicting evidence as to whether a "hot day" protocol ever was in effect at GOPAC. *Compare, e.g*., Fairbank Motion at 4; Exhs. 8 (Docket No. 93-9,

---

[2] Fairbank argues that, by way of its modification, made in response to GOPAC's claimed concern over customer names, it agreed only to eliminate the need to produce documents identifying GOPAC's customers, and it never withdrew its requests in paragraphs B.2 and B.7 of the February 22 Subpoena for email communications between GOPAC and IEH. *See* Fairbank Reply at 4. It further points out that, when GOPAC was confronted with Fairbank's request that the court allow mirror imaging of its hard drives, a request predicated on GOPAC's failure to produce any IEH emails, it claimed only that it had no such emails, not that any such emails were non-responsive. *See id*. While Fairbank's modification plausibly can be construed in the manner it suggests, the quoted language, which addressed the entirety of paragraph B of the subpoena, is ambiguous and plausibly was construed by GOPAC to limit the scope of responsive emails. GOPAC's position, in the context of the request for mirror imaging, that it had no IEH emails is not necessarily inconsistent with its current position that it did not fail to produce IEH emails responsive to the February 22 Subpoena as modified.

*Long*; Docket No. 73-9, *Smith*) & 9 (Docket No. 93-10, *Long*; Docket No. 73-10, *Smith*) to Weber Aff. *with* GOPAC Response at 6-7; Affidavit of Angelo Fili ("Fili Aff.") (Docket No. 98-4, *Long*; Docket No. 77-4, *Smith*), Exh. 4 to GOPAC Response, ¶¶ 6-7; Affidavit of Kathleen Krantz ("Krantz Aff.") (Docket No. 98-5, *Long*; Docket No. 77-5, *Smith*), Exh. 5 to GOPAC Response, ¶¶ 6-8; Affidavit of Mansour Samadpour, Ph.D. (Docket No. 98-12, *Long*; Docket No. 77-12, *Smith*), Exh. 10 to GOPAC Response, ¶ 2. Thus, it is not clear that GOPAC committed a discovery violation in failing to produce a "hot day" plan responsive to this request.

3. Daily Production Records. Fairbank requested "all daily production and operational records, between June 1, 2009 and September 30, 2009, relating in any way to the daily production of beef products by [GOPAC]." February 22 Subpoena ¶ D (emphasis in original). It states that GOPAC failed to produce any of the underlying daily production records supporting a summary spreadsheet found on Fili's hard drive. *See* Fairbank Motion at 5. As a threshold matter, the spreadsheet in question was created for the purpose of facilitating communication with legal counsel, was not meant to be disclosed to Fairbank, and was disclosed inadvertently incident to the hard-drive search. *See* Fili Aff. ¶ 9. In any event, Fili avers that the spreadsheet was prepared from the same production records already provided to Fairbank. *See id*. ¶¶ 4, 9. Fairbank responds that, after extensive effort, it has been unable to locate any document identifying production times identified in the spreadsheet, as a result of which it requests an order compelling GOPAC to identify the specific Bates numbers of each document that shows the timing of GOPAC's production of products on September 11, 2009. *See* Fairbank Reply at 6-7. I decline to do so. Fairbank, which already has had access to the assertedly damaging information found in the spreadsheet, has made an insufficient

showing to warrant the extraordinary relief of compelling GOPAC to reexamine the document production already made to Fairbank, which GOPAC represents was complete.

With respect to the remaining two categories, Fairbank demonstrates that discovery violations occurred in the following fashion:

1. <u>Correspondence With Customers</u>. On August 13, 2010, Fairbank requested that GOPAC produce all documents received from, provided to, or exchanged with GOPAC's customers regarding the sale, handling, and/or disposition of products produced by GOPAC on September 11, 2009. *See* Request for Production of Documents, commencing on page 5 of Defendants' and Third-Party Plaintiffs' First Set of Interrogatories and Request for Production of Documents to [GOPAC], Exh. 3 (Docket No. 92-4, *Long*; Docket No. 72-4, *Smith*) to Weber Aff., ¶ 7. GOPAC failed to produce what Fairbank deems two highly significant communications from a GOPAC customer concerning products produced on September 11, 2009, both of which Fairbank obtained directly from that customer. *See* Fairbank Motion at 3-4; Exh. 5 (Docket No. 93-6, *Long*; Docket No. 73-6, *Smith*) to Weber Aff. GOPAC responds by arguing, at some length, that the non-produced communications do not have the significance ascribed to them by Fairbank. *See* GOPAC Response at 4-6. That is beside the point. GOPAC offers no justification for its clear failure to produce these responsive documents.

2. <u>Drafts of GOPAC's Response to NOIE</u>. By way of a May 5, 2010, subpoena for the Rule 30(b)(6) deposition of GOPAC, Fairbank requested production, *inter alia*, of all internal documents and emails exchanged between GOPAC employees relating in any way to the NOIE issued by FSIS to GOPAC on January 21, 2010, including but not limited to any emails relating to

GOPAC's assessment of and response to the NOIE. *See* Subpoena dated May 5, 2010 ("May 5 Subpoena") (Docket No. 92-3, *Long*; Docket No. 72-3, *Smith*), Exh. 2 to Weber Aff., at 3 ¶ D.

GOPAC produced no drafts of responses to the NOIE or emails concerning the same. *See* Fairbank Motion at 4. Fili, testifying as GOPAC's Rule 30(b)(6) designee, stated that there was only one draft of GOPAC's response to the NOIE, that he did not know what a red-line was and did not use a red-lining computer program, and that he and another GOPAC employee, Kathleen (presumably, Kathleen Krantz), gathered around a single computer to create the document, which Krantz typed. *See* Videotaped Deposition of Angelo C. Fili (Docket No. 93-13, *Long*; Docket No. 73-13, *Smith*), Exh. 12 to Weber Aff., at 257-58.

Fairbank subsequently found emails on Fili's hard drive concerning revised drafts of GOPAC's response to the NOIE as well as a red-lined draft NOIE response on Krantz's hard drive. See Fairbank Motion at 4; Exh. 11 (Docket No. 93-12, *Long*; Docket No. 73-12, *Smith*) to Weber Aff.

In response, GOPAC submits Fili's statement that he does not recognize the red-lined information supplied by Fairbank in Exhibit 11, is not familiar with the red-line process, does not use it and, after receipt of Fairbank's motion, was unable to cause red lines to appear on any documents on his or Krantz's hard drives. *See* Fili Aff. ¶ 13. He adds that, in working with Krantz and Besta on a response to the NOIE, he thought that they were working on a single draft document. *See id*. Fili does not explain why GOPAC failed to produce emails to himself from Krantz, found in his hard drive, regarding GOPAC draft NOIE responses. Further, while he may personally have been unfamiliar with the red-lining process and may have not seen the document found on Krantz's hard

8

drive in red-lined form, his ignorance does not explain or excuse *GOPAC's* failure to produce that draft document.

### B. Asserted Ongoing Incomplete Discovery

In my September 28 order granting in part Fairbank's request for targeted e-discovery in the form of mirror-imaging of select GOPAC computers, I stated: "The request is granted with respect only to the hard drives contained in the following computers: the laptop and desktop computers of GOPAC Vice-President of Technical Resources Kathleen Krantz, the desktop computer of GOPAC Quality Control Manager Angel Besta, and the desktop computer of GOPAC Executive Vice-President Angelo Fili." September 28 Order at 2-3.

Fairbank states that (i) it has now discovered that Krantz used a different corporate email account, kathleen@greateromaha.com, prior to March 2010, (ii) emails sent to that corporate email address are not contained on the hard drives produced for Krantz and cannot be found, and, (iii) hence, emails sent and received by Krantz using her 2009 and early 2010 corporate email account either were destroyed or are contained on computers not produced by GOPAC. *See* Fairbank Motion at 5-6.[3] It adds that very few emails were found on any of the remaining computers for the critical time periods at issue. *See id*. at 7. It observes that its consultant, Digital Intelligence, was able to determine that each of the computers GOPAC produced for imaging were new computers, only put into service in December 2009 and January 2010 (during the course of the federal investigation of GOPAC), that, despite Fairbank's request, GOPAC has not identified the location

---

[3] Fairbank notes that Krantz testified that she was told about Fairbank's December 3, 2009, evidence preservation letter to GOPAC and denied that she had deleted any emails or files from her work computer or laptop. *See* Fairbank Motion at 5; Exh. 15 (Docket No. 93-16, *Long*; Docket No. 73-16, *Smith*) to Weber Aff. at 127.

of, or provided to Fairbank, the Fili, Krantz, and Besta pre-December 2009 computers, and thus Fairbank's attempts to obtain responsive information dating back to June 2009 have been frustrated. *See id*. at 7.

Fairbank adds that, as a result of the mirror imaging, it also discovered that GOPAC employees routinely use non-company email accounts such as Hotmail and Gmail to transmit critical information. *See id*. at 6. It observes, for example, that when a customer wrote to a GOPAC employee expressing concern over high test results for coliform and generic *E. coli*, that employee forwarded the email to Besta at her Hotmail and Gmail accounts, and only when Besta forwarded the email string to her corporate email account did it become discoverable on her hard drive. *See id*.; Exh. 17 (Docket No. 93-18, *Long*; Docket No. 73-18, *Smith*) to Weber Aff. It seeks to discover whether other critical information is being concealed by GOPAC and its employees in Hotmail, Gmail, and AOL accounts. *See* Fairbank Motion at 6.

GOPAC (i) denies that Krantz deleted any emails, *see* GOPAC Response at 7; Krantz Aff. ¶ 4; Affidavit [of Thomas Kelley] ("Kelley Aff.") (Docket No. 103-9, *Long*; Docket No. 82-9, *Smith*), Exh. 9 to GOPAC Response, ¶¶ 7-10, and (ii) represents that emails sent to kathleen@greateromaha.com were forwarded to Krantz's AOL email account, which she historically has used as her primary account and of which Fairbank previously was aware, and hence did not reside on Krantz's hard drive but might be located on the servers of AOL, *see* GOPAC Response at 7-8; Kelley Aff. ¶ 7; Exh. 3 (Docket No. 98-3, *Long*; Docket No. 77-3, *Smith*) to GOPAC Response.

In his affidavit, Kelley also states, in relevant part, that (i) he has been providing computer consulting services to GOPAC for approximately eight years, (ii) various computers in service at GOPAC, including those of Krantz, Fili, and Besta, were replaced during the fall of 2009 at his

10

recommendation, as a result of a need to upgrade those computers to Windows 7, (iii) he used a "migration" tool that allowed for the transfer of all hard-drive material in conjunction with the replacement of those computers, and all hard-drive contents were transferred in that fashion, and (iv) he wiped clean the prior computers and returned them to other service at the GOPAC facility. Kelley Aff. ¶¶ 3-6. *See also* Fili Aff. ¶ 10 (the process of computer replacement, initiated at Kelley's recommendation, "was understood as in no way disturbing nor destroying any computer information").

GOPAC points out that the email to which Fairbank points as being indicative of the existence of critical GOPAC information on private email accounts concerned generic *E coli*, not *E coli* 0157:H7, which is at issue in this case. *See* Fili Aff. ¶ 11; *see also* Exh. 17 to Weber Aff.

### C. Relief Sought

Fairbank notes that, pursuant to Federal Rule of Civil Procedure 26(b)(1), "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fairbank Motion at 8 (internal quotation marks omitted). It adds that the court has broad discretion pursuant to Federal Rule of Civil Procedure 37 to fashion appropriate sanctions for discovery transgressions. *See id.* Based on these principles, it seeks (i) orders compelling extensive additional discovery, (ii) an order to show cause why GOPAC should not be sanctioned for failing to produce all computers to Digital Intelligence for the identified employees, and (iii) an order requiring GOPAC to pay all costs, vendor fees, and attorney fees and expenses incurred by Fairbank in

connection with all hard-drive mirror imaging as well as any other additional costs resulting from GOPAC's failure to comply with its discovery obligations. *See id*. at 9-10.[4]

The requested relief is ***DENIED***. Fairbank already has been granted extraordinary relief in the form of my September 28 order permitting the mirror-imaging of the Fili, Krantz, and Besta computers. By virtue of that relief, as is clear from the instant motion, it obtained significant discovery from GOPAC. Discovery in this matter closed on December 20, 2010, *see* Docket No. 82, *Long*; Docket No. 67, *Smith*, following several prior discovery deadline extensions, *see* Docket Nos. 16, 21, *Smith* (enlarging, *inter alia*, discovery and dispositive motion deadlines by one month, to October 22, 2010, and November 12, 2010, respectively); Docket No. 55, *Long*; Docket No. 46, *Smith* (enlarging, *inter alia*, discovery and dispositive motion deadlines by an additional month, to November 22, 2010, and December 13, 2010, respectively); Docket No. 82, *Long*; Docket No. 67, *Smith* (enlarging, *inter alia*, discovery and dispositive motion deadlines by an additional month, to December 20, 2010, and January 10, 2011, respectively). I am reluctant, absent a strong showing of necessity for the requested relief, to reopen discovery.

That showing has not here been made. As discussed above, Fairbank falls short of making a persuasive case that GOPAC committed discovery violations with respect to all but a handful of documents. For purposes of either the requested additional discovery or the requested order to show

---

[4] The requested additional discovery includes orders compelling GOPAC to (i) disclose, and make available for search to Fairbank's computer consultant, all personal or non-GOPAC email accounts used in any way for GOPAC business, (ii) produce all computers, servers, and hard drives used at any time from June 1, 2009, to the present by Fili, Krantz, Besta, and others, (iii) permit Fairbank to depose GOPAC's Information Technology person, (iv) produce GOPAC's "litigation hold" letter for this matter, if any, and evidence of when and to whom it was distributed, (v) disclose all production records relating to products produced between September 10 and 12, 2009, including all categories of records relied upon to create the spreadsheet discovered on Fili's hard drive, and (vi) permit Fairbank to take such additional depositions as may be reasonably necessary to explore and develop facts contained in documents that should have been, but were not, timely produced. *See* Fairbank Motion at 9.

12

cause why GOPAC should not be sanctioned for failing to produce all computers of the three targeted GOPAC employees, Fairbank also fails to make a persuasive case that GOPAC either deleted pre-March 2010 emails or transgressed my September 28 order in failing to produce the older computers of Fili, Krantz, or Besta. GOPAC adduces uncontroverted evidence that (i) long before my order issued, the older computers were replaced at the suggestion of GOPAC computer consultant Kelley, who used a "migration tool" to transfer the hard-drive contents, and (ii) Kelley has found no forensic evidence of email deletion. Finally, on the showing made, the requested sanction of payment of fees and costs is unwarranted.

## II. Handling of Attorneys' Eyes Only Documents

In response to Fairbank's request for an order to show cause why GOPAC should not be held in contempt for accessing discovery materials marked as for Attorneys' Eyes Only, GOPAC stated that:

1. By letter dated August 10, 2010, GOPAC attorney Alison Denham mailed to GOPAC's Fili, as well as to her co-counsel Brian Nolan, a compact disc of Fairbank's initial disclosures containing documents designated Attorneys' Eyes Only. *See* Affidavit of Alison A Denham, Esq. ("Denham Aff.") (Docket No. 103-1, *Long*; Docket No. 82-1, *Smith*), Exh. 1 to GOPAC Response, ¶ 15. As a result of a delay that she attributes to Fairbank, Denham had not had time to review the initial disclosures prior to mailing them and did not realize that the compact disc contained Attorneys' Eyes Only documents. *See id*. ¶¶ 13-15.

2. Soon thereafter, Denham's co-counsel Sue Stryker alerted Denham that she had begun reviewing the documents and had determined that some were designated Attorneys' Eyes Only and

13

should not have been shared with Fili. *See id*. ¶ 16. Stryker advised Denham that her firm would retrieve the documents from Fili and instruct him not to look at them. *See id*.

3. On August 18, 2010, Denham had a conference call with Fairbank attorneys Ralph Weber and Shawn Stevens during which Fairbank asked her to confirm that documents designated as Attorneys' Eyes Only had been handled as such. *See id*. ¶ 17. Denham disclosed that she had made an error in the process of routing documents to her client, that the error had been discovered, and that the Attorneys' Eyes Only documents had been pulled back from her client. *See id*.

4. In a follow-up email that same day to Stevens and Stryker, Denham asked Stryker to confirm that representation. *See* Exh. 19 (Docket No. 92-20, *Long*; Docket No. 72-20, *Smith*) to Weber Aff. By email dated September 27, 2010, Stevens asked Stryker to respond to Denham's email. *See id*. The same day, Stryker emailed: "Confirmed." *Id*.

5. After receiving the compact disc in question from Denham, Fili downloaded it and accessed it on one occasion, scanning through approximately 200 pages of what appeared to be Fairbank documentation. *See* Fili Aff. ¶ 12. He did not read it in detail as he was anticipating a later opportunity to do so. *See id*. He was advised, thereafter, that the material had been mistakenly forwarded to him and that he should not read further. *See id*. He promptly delivered the compact disc to Stryker. *See id*. He subsequently moved the file without opening it or reading any of the material contained therein, with the purpose of segregating it in an attempt to avoid inadvertent access. *See id*. He has not accessed the file at any time since. *See id*.[5]

---

[5] In connection with its initial motion, Fairbank had submitted evidence from its computer consultant, Digital Intelligence, that the materials uploaded to Fili's hard drive were saved on August 10 and 20, 2010, and never deleted. *See* Fairbank Motion at 7; Exh. 18 (Docket No. 92-19, *Long*; Docket No. 72-19, *Smith*) to Weber Aff.

6. GOPAC computer consultant Kelley reviewed the relevant Digital Intelligence spreadsheet designated "Fili – Search Results." *See* Kelley Aff. ¶ 11. That record reflects that a "Fairbank Disclosure.pdf" file exists twice in Fili's file structure. *See id*. One of those files was created on August 10, and the last access of that file was on August 11 at 10:27 a.m. *See id*. The other file was created on August 20 at 6:09 a.m., and there is no indication that it was opened, as for review or reading, at any time thereafter. *See id*.

In response, Fairbank produced evidence, in the form of an affidavit of its computer consultant, Erik Thompson of Digital Intelligence, that Thompson had determined after analyzing the data contained in the mirror-imaged hard drives that a copy of the Fairbank Disclosure file was created and accessed using a USB storage drive, commonly referred to as a thumb drive, a portable device that can be used to save, transport, and view information on any computer. *See* Affidavit of Erik K Thompson (Docket No. 118-1, *Long*; Docket No. 96-1, *Smith*), attached to Fairbank Reply, ¶ 4. Thompson stated that he found a file on Krantz's laptop showing that the Fairbank Disclosure file was created on a thumb drive on August 24, 2010, and accessed on Krantz's laptop computer on August 29, 2010. *See id*. ¶ 5. He also determined that Fili's desktop computer was used to access the Fairbank Disclosure file on at least two occasions using USB storage drives, on August 23, 2010, and September 2, 2010. *See id*. ¶ 6. He also found evidence that the Fairbank Disclosure file was transferred from Fili's computer to an iPod or iPhone on August 21, 2010. *See id*. ¶ 7.

In these circumstances, as Fairbank now contends, *see* Fairbank Reply at 1-3, it appears that GOPAC not only violated the confidentiality orders issued in both the *Long* and *Smith* cases, *see* Confidentiality Order (Docket No. 17, *Long*; Docket No. 17, *Smith*) ¶¶ 4, 6(b), but also misrepresented to Fairbank's counsel that Attorneys' Eyes Only documents had been "pulled back"

15

and submitted to the court a false affidavit of Fili with respect to the accessing of those documents. Accordingly, Fairbank's motion is ***GRANTED*** to the extent that it seeks an order to show cause why GOPAC should not be held in contempt of court on account of that conduct, and I am separately issuing that order this date.

As GOPAC observes, *see* GOPAC Response at 2-3, in this circuit, a party accused of civil contempt is entitled to an evidentiary hearing when there are disputed issues of material fact, *see, e.g., Goya Foods, Inc. v. Wallack Mgmt. Co*., 290 F.3d 63, 77 (1st Cir. 2002); *FTC v. Case Equip. Co*., 821 F. Supp. 790, 792 (D. Me. 1993). My Order To Show Cause affords GOPAC the opportunity to dispute facts adduced by Fairbank in support of its request to hold GOPAC in contempt of court.

### III. Conclusion

For the foregoing reasons, the Fairbank Motion is ***GRANTED*** in part, to the extent that it seeks the issuance of an order to show cause why GOPAC should not be held in contempt of court, and otherwise ***DENIED***, to the extent that it seeks relief on account of asserted discovery violations.

### IV. Sealing of This Decision

I ***DIRECT*** the Clerk of the Court to seal this Order when docketed. The parties shall notify me by noon on February 24, 2011, with due regard to the public's interest in access to court proceedings, whether this Order contains any confidential information that should remain sealed and, if so, indicate explicitly what language is proposed to be redacted, and why. If I do not hear from the parties by noon on February 24, 2011, this Order will be unsealed.

***SO ORDERED***.

## *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to appeal the district court's order.*

Dated this 17th day of February, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge